UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DELORA C. ERWIN, o/b/o** | ) | |
| **B.M.S.-D., a minor,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-CIV-605-AMG** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Delora C. Erwin ("Plaintiff") brings this action on behalf of B.M.S.-D. ("Claimant" and minor child) pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Claimant supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1).[1]  The Commissioner has filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues. (Docs. 9, 17).  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 12, 13).  Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.      Procedural History

On March 24, 2016, Claimant was determined disabled as of December 14, 2015. (AR, at 101-08).  On May 16, 2019, Claimant was determined to be no longer disabled as of that date.  (*Id*. at 109-11).  Claimant sought review of that decision, and an administrative hearing was conducted telephonically on August 7, 2020.  (*Id*. at 76-100).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff was not disabled. (*Id*. at 113-41).  The Appeals Council remanded the decision, and "directed the [ALJ] to give further consideration to the non-treating source opinions and non-examining source opinions, and explain the weight afforded each opinion."  (*Id*. at 142-45).    A second administrative hearing was held telephonically on November 8, 2022.  (*Id*. at 60-75). Following that hearing, the ALJ issued a decision finding Plaintiff was not disabled.  (*Id*. at 14-48).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II.     The Disability Standard and Standard of Review

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance").  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).  But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

Since Claimant had previously been found disabled, the ALJ first had to conduct a continuing disability review to determine whether Claimant's disability had ended. *See* 20 C.F.R. § 416.994a.  The continuing disability review involves three steps.  At Step One, the ALJ considers whether the claimant has experienced "medical improvement" since the most recent favorable determination (called the "comparison point decision" or "CPD").  If the claimant has not experienced medical improvement, subject to a few exceptions, the ALJ must find that the claimant is still disabled. *Id.* § 416.994a(b)(1).  At Step Two, if the ALJ finds medical improvement, he will determine whether the claimant's impairment still meets or equals the severity of the Listing it met or equaled at the time of the previous

determination. If so, the claimant is still disabled, unless an exception applies. *Id.* § 416.994a(b)(2). At Step Three, if the impairment no longer meets or equals the Listing it previously met or equaled, the ALJ will decide whether the person is currently disabled, considering all of the impairments he now has. *Id.* § 416.994a(b)(3). At this third step, if a child-claimant's current, severe impairments do not meet or equal a listing, the ALJ then must decide whether they "functionally equal" a listing. *Id.* § 416.926a(a). This is done by evaluating the degree of limitation (i.e., extreme, marked, less than marked, or no limitation) in six "domains:" (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id.* § 416.926a(b)(1). A child is disabled if he has "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a).

## III.    Administrative Decision

The ALJ identified the March 24, 2016, determination as the relevant CPD. (AR, at 21). The ALJ noted that, at the time of the CPD, Claimant had the medically determinable mental impairment of autism. (*Id.*)[2] At Step One, the ALJ determined there had been medical improvement to Claimant's impairments since the CPD as of May 16, 2019. (*Id.*) At Step Two, the ALJ determined that Claimant's autism no longer met or equaled Listing 112.10 in 20 C.F.R. Part 404, Subpart P, Appendix 1, as that listing was

---

[2] Claimant was also determined to have the severe physical impairment of bilateral foot dysfunction, both currently and at the time of the CPD, (AR, at 21, 26); however, the ALJ's determination regarding Claimant's physical impairments was not challenged on appeal and therefore is not discussed herein.

written at the time of the CPD. (*Id*. at 22). The ALJ then discussed the six domains of function and determined that Claimant's impairments did not result in "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning. (*Id*. at 22-26). Therefore, the ALJ determined Claimant's impairments at the time of the CPD had not functionally equaled the listings since May 16, 2019. (*Id*. at 26).

The ALJ then considered the Claimant's current impairments, including those that were not considered in the CPD. (*Id*.) The ALJ held that, since May 16, 2019, Claimant had the severe mental impairments of attention deficit hyperactivity disorder (ADHD), adjustment disorder with disturbance of conduct, and autism. (*Id*.) The ALJ considered Claimant's severe impairments in combination with his non-severe impairments and determined that, since May 16, 2019, Claimant's impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 27). Evaluating the six domains, the ALJ also found that Claimant's current impairments did not functionally equal the listings. (*Id*. at 27-39). Thus, the ALJ found Claimant's disability ended as of May 16, 2019. (*Id*. at 39).

III.    **Claims Presented for Judicial Review**

On appeal, Plaintiff asserts that the ALJ's finding that Claimant's severe mental impairments did not functionally equal a listing is not supported by substantial evidence. (Doc. 9, at 8). More specifically, Plaintiff challenges the ALJ's determination that Claimant had a "less than marked" limitation in the "acquiring and using information" domain. (*Id*. at 8-15). In response, the Commissioner argues that the ALJ "considered evidence of both greater limitations and lesser limitations," and his "finding that [Claimant]

only had marked limitations in one area . . . was supported by far [more] than the 'mere scintilla' of evidence sufficient to survive this Court's highly deferential standard of review." (Doc. 17, at 2) (citing *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)).

**IV.     The ALJ's Finding Of A "Less Than Marked" Limitation In Acquiring And Using Information Is Supported By Substantial Evidence.**

Plaintiff challenges the findings of the ALJ in the functional domain of Acquiring and Using Information, arguing that the ALJ "exclud[ed] the impact of [Claimant's] attention issues from his evaluation of his ability to acquire and use information" and "ignored IQ testing demonstrating significant impairment in [Claimant's] intellectual ability." (Doc. 9, at 10).

To determine the level of impairment in the Acquiring and Using Information domain, the regulations state that the agency will consider how well a child acquires or learns information and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). "Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation" in the acquiring and using information domain. Social Security Ruling ("SSR") 09-3p, 2009 WL 396025, at *2. The domain "considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." *Id*. "The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s)." *Id*.

In evaluating this domain, the ALJ discussed the opinions of Claimant's teachers regarding Claimant's "serious problem with understanding and participating in class

discussions," and Claimant's "obvious" problems with "comprehending oral instructions, understanding school and content vocabulary, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and learning new material." (AR, at 35) (citing AR, at 521). However, the ALJ found these were "problems with attention, not with actually acquiring or using information" and that Claimant's "limitations not due to attention issues appear only partially consistent with the record" as his "medical records do not document any obvious cognitive issues, and his IEP indicates he is generally at age level in math." (*Id*.)

The ALJ considered that the evidence showed "sufficient deficits in math at higher grades to require special education services," but also noted that "the nature of his accommodations and other reports," such as the need to "test[] in small groups to avoid distractions," again indicated this is an attention rather than cognitive issue. (*Id*.) The ALJ discussed the opinions of the stage agency medical consultants that Claimant has a "less than marked limitation" in this domain based on the "lack of vision or hearing impairment to interfere with acquiring information and a 53 percent language score based on school testing." (*Id*.) (citing AR, at 815).

In conclusion, the ALJ found:

> Overall, his school records indicate he is able to meet age appropriate academic demands in all areas except for reading. Moreover, there is little to suggest any apparent learning or cognitive issues, except in math. The claimant remains in a regular classroom, and his medical treatment focuses on attention, rather than any cognitive issues. **The undersigned finds the record reflects a deficit in this area, but it is less than marked**.
>
> In contrast, the claimant's representative argues that a marked limitation is present in this area. However, this relies on findings related to

the claimant's condition prior to his cessation date, when he was admitted disabled.  In addition, there mere presence of special education services is not sufficient to indicate a marked limitation, despite the argument to the contrary, and this argument also explicitly combines this with concentration problems, which are considered below.  Overall, the record simply does not support a marked limitation.  The claimant's [sic] had remained in a general classroom, with limited assistance and accommodation in reading and math. He has received excellent grades, and his treatment notes do not suggest any notable cognitive issues.  Thus, a less than marked limitation is established here.

(*Id*. at 35-36) (emphasis added and citation omitted).

This Court does not find that the ALJ's evaluation of this domain was flawed or erroneous.  The ALJ followed the guidance from the regulations in considering relevant factors, and substantial evidence supports his conclusions.  More to the point, the ALJ appropriately considered the difference between attention issues (which Claimant has) and cognitive issues (which Claimant lacks) and highlighted his success with attention-related accommodations in his IEP plan resulting in "excellent grades."  This is "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion" that Claimant has a less than marked limitation in his ability to acquire and use information. *Staheli*, 84 F.4th at 905.

Plaintiff specifically argues that the ALJ erred by failing to discuss Claimant's IQ testing in April 2022, wherein he scored a 75, "within the very low range."  (Doc. 9, at 14) (citing AR, at 984).  But the ALJ did consider the IEP plan containing this assessment. (AR, at 32).  Moreover, the regulations provide that the Commissioner "will not rely on any test score alone" and that "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."  20 C.F.R.

§ 416.926a(e)(4)(i).  Instead, test scores are to be considered with other information about functioning, "including reports of classroom performance and the observations of school personnel and others."  *Id*. § 416.926a(e)(4)(ii).  For example, a marked or extreme limitation may still be found where test scores are "slightly higher" than two or three standard deviations below the mean if "functioning in day-to-day activities is seriously or very seriously limited" because of the child's impairments, including where evidence shows the impairments cause the child to function "in school, home, and the community far below [his] expected level of functioning based on [the test] score."  *Id*. § 416.926a(e)(4)(ii)(A).  Conversely, "a valid IQ score" otherwise consistent with marked limitations may not support marked limitations where the child "learned to drive a car, shop independently, and read books near [his] expected grade level." 20 C.F.R. § 416.926a(e)(4)(ii)(B).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citation omitted).  The ALJ's decision reflects that he considered the entire record, including the specific evidence cited by the Plaintiff.  In essence, Plaintiff's arguments regarding the ALJ's evaluation of this domain turns on her contention that the evidence could support a different conclusion.  Thus, Plaintiff simply disagrees with the conclusions drawn by the ALJ, and her disagreement is centered on arguments that would impermissibly require this

Court to reweigh the evidence.  *See White*, 287 F.3d at 909 (recognizing that much of the medical evidence was in conflict, but the ALJ weighed all the evidence in reaching his decision and the court could not "now reweigh that evidence and substitute [its] judgment for his").  *See also Fannin v. Comm'r, SSA*, 857 F. App'x 445, 448 (10th Cir. 2021) (noting that reweighing the evidence "exceeds the scope of substantial-evidence review"); *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments] Mr. Alarid is asking us to reweigh the evidence, which we cannot do.").  Accordingly, the Court finds Plaintiff's assertion of error fails.

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 9th day of May, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE